IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-124-BO

| | |
|---|---|
| MARK A. PHILLIPS,<br>Plaintiff,<br><br>v.<br><br>CAROLYN COLVIN,<br>Acting Commissioner of Social Security,<br>Defendant. | )<br>)<br>)<br>) **ORDER**<br>)<br>)<br>)<br>)<br>) |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings. [DE 18, 22]. A hearing on this matter was held in Elizabeth City, North Carolina on September 8, 2015. For the following reasons, this matter is remanded for further proceedings.

## BACKGROUND

Plaintiff applied for Title XVI Supplemental Security Income benefits on March 11, 2008, alleging disability as of September 1, 2005. [Tr. 345–51]. His application was denied initially and upon reconsideration. After a hearing, an Administrative Law Judge (ALJ) rendered an unfavorable decision. [Tr. 118]. Upon Mr. Phillips's request for review, the Appeals Council remanded the case for further proceedings. [Tr. 137]. Following a second hearing, an ALJ again rendered an unfavorable decision on September 25, 2013. [Tr. 42]. The Appeals Council denied Mr. Phillips's request for review, rendering the second ALJ's decision the final decision of the Commissioner on April 7, 2014. [Tr. 5]. Mr. Phillips now seeks judicial review.

Mr. Phillips was 45 years old as of his alleged onset date and has a ninth-grade education. [Tr. 62]. He has no past relevant work. [Tr. 32]. He alleges disability based on mental health disorders and has been prescribed Klonopin, Lithium, Doxepin, Invega, Seroquil, Trazodone, Prozac, Thorazine, and Zyprexa. [Tr. 577, 708, 721, 770].

DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the Court's review is limited to the determination of whether there is substantial evidence to support the Commissioner's findings and whether the Commissioner employed the correct legal standard. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In evaluating whether a claimant is disabled, an ALJ uses a multi-step process. First, a claimant must not be able to work in a substantial gainful activity. 20 C.F.R. § 404.1520. Second, a claimant must have a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* Third, to be found disabled, without considering a claimant's age, education, and work experience, a claimant's impairment must be of sufficient duration and must either meet or equal an impairment listed by the regulations. *Id.* Fourth, in the alternative, a claimant may be disabled if his or her impairment prevents the claimant from doing past relevant work and, fifth, if the impairment prevents the claimant from doing other work. *Id.* The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

At step one, the ALJ determined that plaintiff met the insured status requirements and had not engaged in substantial gainful activity since his application date. [Tr. 21]. The ALJ found a number of severe impairments,[1] including attention deficit-hyperactivity disorder, bipolar

---

[1] The Court will not address the exertional limitations as they are not challenged by plaintiff in this appeal.

2

affective disorder, depression/anxiety, borderline intellectual functioning, schizoaffective disorder, cognitive disorder, and personality disorder. [Tr. 21]. None were found alone or in combination to meet or equal a listing at step three. [Tr. 22]. The ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform a limited range of light work with numerous exertional and nonexertional limitations. [Tr. 25]. Because Mr. Phillips had no past relevant work, the ALJ relied on the testimony of a vocational expert to conclude that jobs exist in significant numbers in the national economy that plaintiff could perform, including remnant sorter, bakery worker, and agricultural produce sorter. [Tr. 33]. Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act.

Plaintiff alleges that the ALJ erred by improperly evaluating the opinion of treating physician Dr. Jonnalagadda. Treating source opinions are entitled to controlling weight if they are "well supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Dr. Jonnalagadda diagnosed alcohol dependence, depressive disorder, bipolar affective disorder, and alcoholic psychosis in 2008. [Tr. 721]. He noted that plaintiff suffered from poor attention and concentration, poor recent and remote memory, anxiety, mood swings, anger, irritability, and racing thoughts. [Tr. 718]. He opined that Mr. Phillips was markedly limited[2] in his ability to, *inter alia*, understand and remember detailed instructions, maintain concentration and concentrate for extended periods, and complete a normal workweek without interruptions from psychologically-based symptoms. [Tr. 724–44]. He further opined that Mr. Phillips was incapable of tolerating even low-stress work and estimated that plaintiff would be absent from

---

[2] A marked limitation is one that "effectively precludes the individual from performing the activity in a meaningful manner." [Tr. 742].

3

work approximately three times per month because of his impairments and treatment. [Tr. 748–49]. Dr. Jonnalagada concluded that plaintiff's that plaintiff's "ability to compete in the job market is extremely limited," and that he was totally disabled. [Tr. 747, 749]. While being treated by Dr. Jonnalagada, Mr. Phillips received GAF scores of 40 and 45.

While a physician's assistant (PA) is not an acceptable medical source, evidence from other sources may be used "to show the severity of [a claimant's] impairment(s) and how it affects [his] ability to engage in work related activities." 20 C.F.R. § 416.913(a), (d); *see also* SSR 06-3p. Here, PA Hawley treated Mr. Phillips from 2009 to 2011. [Tr. 772–84, 830–64]. PA Hawley's assessment of Mr. Phillips is decidedly similar to that of Dr. Jonnalagadda. PA Hawley diagnosed bipolar disorder and a history of alcohol dependence in partial remission in 2010. [Tr. 841–88]. Like Dr. Jonnalagadda, PA Hawley opined that plaintiff had marked limitations in his ability to understand, and carry out detailed instructions, maintain attention for extended periods, work with or near others, interact appropriately, respond appropriately to supervisory criticism, and get along with coworkers. [Tr. 844–45]. He also opined that Mr. Phillips was markedly limited in his ability to complete a workweek without interruption. [Tr. 845]. He further opined that Mr. Phillips would miss work more than three times per month due to his impairments or treatment and that Mr. Phillips had reduced intellectual functioning. [Tr. 847–48].

These opinions are not undermined by the opinions of the consultative examiners. Dr. Stack noted a full-scale IQ of 65, verbal IQ of 63, and performance IQ of 65 in 2007. [Tr. 609]. He diagnosed mild mental retardation, major depressive disorder, and mild attention deficit-hyperactivity disorder. [Tr. 610]. He opined that Mr. Phillips could not sustain attention to perform simple repetitive tasks and could not relate to others or tolerate the stress and pressures of day to day work activities. [*Id.*]. While it appears that Dr. Farmer was not provided with

4

plaintiff's mental health records, he still diagnosed generalized anxiety disorder and gave a provisional diagnosis of intermittent explosive disorder and borderline intellectual functioning in 2012. [Tr. 1023]. He opined that plaintiff was limited in his ability to understand and follow instructions, though his ability to relate to coworkers and supervisors was "minimally adequate." [Tr. 1024]. Dr. King also evaluated Mr. Phillips in 2012, although she had access to a limited portion of plaintiff's treatment records. [Tr. 1026–30]. Dr. King diagnosed mood disorder and alcohol dependence, finding that he was able to understand simple instructions, but more complex instructions were difficult for him. [Tr. 1029–30, 1033]. Dr. King attempted to measure his intellectual functioning but found his performance underrepresented his functional capacity, rendering the scores invalid. [Tr. 1029].

The ALJ did not identify substantial evidence contradicting the opinion of Dr. Jonnalagadda. Instead, the ALJ dismissed the evidence because it was in questionnaire form and was inconsistent with his own treatment notes. [Tr. 29]. This was incorrect. The fact that the evidence was in questionnaire form is irrelevant, and Dr. Jonnalagadda's opinion was based on objective medical evidence, such as plaintiff's GAF scores and examinations over the 13-month treatment period. *See* 20 C.F.R. § 416.928 (identifying observable psychiatric abnormalities as acceptable clinical and diagnostic techniques). Moreover, Dr. Jonnalagadda's opinion is virtually identical to that of PA Hawley and extremely consistent with that of consultative examiner Dr. Stack's opinion. [Tr. 610]. Even though Drs. King and Farmer, on whom the ALJ relied, did not review the entirety of plaintiff's psychological records, these consultative examiners identified many of the same limitations as the treatment providers. It is clear that Dr. Jonnalagadda's opinion is supported by medically acceptable techniques and is not inconsistent with the other substantial evidence in the record and that the ALJ erred by not giving it controlling weight.

5

The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the district court." *Edwards v. Bowen*, 672 F.Supp. 230, 236 (E.D.N.C. 1987). It is appropriate for a federal court to "reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). Remand is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) (citing *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012)).

Here, the appropriate action is to remand the case to the Commissioner. *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011). ("assessing the probative value of competing evidence is quintessentially the role of the fact finder."). Upon remand, the Commissioner is to give Dr. Jonnalagadda's opinion controlling weight, to consider the later Medicaid determination that plaintiff is fully disabled, and to reassess plaintiff's credibility in light of these findings.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings [DE 18] is GRANTED, defendant's motion for judgment on the pleadings [DE 22] is denied, and the matter is REMANDED to the Commissioner for further proceedings consistent with this decision.

SO ORDERED, this __18__ day of September, 2015.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE